1
2
3
4

Connor W. Olson SBN 291493
Law Offices of Connor W. Olson
520 Capitol Mall, Suite 150
Sacramento, CA  95814
office@cwo-law.com
Phone: 916-905-7276

5
6

**Attorney for Plaintiff and Putative Class**
*Additional Attorneys listed on Signature Page*

7
8
9

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

10
11
12
13

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ELIJAH SOTO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>        Plaintiffs,<br><br><br>v.<br><br><br><br>FUTURE MOTION, INC., a Delaware Corporation and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 5:20-cv-06982-SVK<br><br>Date: N/A<br>Time: N/A<br>Dept: N/A<br><br>UNLIMITED CIVIL CASE<br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. **False Advertising in Violation of California Business & Professions Code §§ 17500, *et seq.***<br>2. **Violation of Manufacturer's Duties Under the Song-Beverly Consumer Warranty Act §§ 1790, *et seq.***<br>3. **Violation of Consumer Legal Remedies Act §§ 1750, *et seq.***<br>4. **Unfair Business Practices in Violation of California Business & Professions Code §§ 17200, *et seq.***<br>5. **Breach of Express Warranty**<br>6. **Negligent Misrepresentation**<br>7. **Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL**<br>**DEMAND FOR PUNITIVE DAMAGES** |

## CLASS ACTION COMPLAINT

1.    Plaintiff Elijah Soto brings this Class Action against Future Motion, Inc., and DOES 1 through 100, inclusive ("Defendants"), on behalf of himself, by and through his attorneys, and all other owners (the "Class") of the Onewheel+ XR ("Class Vehicle" or "XR")[1] to obtain relief for certain misrepresentations and a complete failure to warrant in violation of California's consumer protection laws and common law.

## NATURE OF THIS ACTION

2.    Plaintiff, on behalf of himself and all others similarly situated, seeks declaratory relief, injunctive relief, monetary damages, penalties, statutory and punitive damages, equitable relief, and attorney fees and costs, under, *inter alia,* False Advertising in Violation of California Business & Professions Code §§ 17500, *et seq.*, Violation of Manufacturer's Duties under Song-Beverly Consumer Warranty Act (Civil Code §§ 1790, *et seq.*), Violation of Consumer Legal Remedies Act (Civil Code §§ 1750, *et seq.*), Unfair Business Practices in Violation of California Business & Professions Code §§ 17200, *et seq.*, Breach of Express Warranty, Negligent Misrepresentation, and Unjust Enrichment.

---

4.    The "Class Period" is designated as of the time from February 1, 2018, through the date of the trial and is based upon allegations that Defendants misrepresented material facts, failed to honor express and implied warranties, and continue to market and sell the XR as extremely durable and having all-terrain capabilities.  The allegations are based upon personal knowledge and belief as to their own acts, and upon information and belief (based on investigation by Plaintiff, the Putative Class, and Counsel) as to all other matters and allegations, Plaintiff believes substantial evidentiary support exists after a reasonable opportunity for further investigation and discovery of evidence, as follows.

---

[1] Onewheel XR is a battery operated single-wheeled skateboard designed for "on-and-off-road journeys of 12-18 miles." See Onewheel Press Release at https://www.dropbox.com/sh/yv8mktvkea3quee/AAB1XudZCjdrM4op5Wq1IMmIa/press-releases?dl=0&preview=CES+2018+Onewheel+XR+press+release.pdf&subfolder_nav_tracking=1

FIRST AMENDED CLASS ACTION COMPLAINT

1

**JURISDICTION AND VENUE**

2    5.    This Court has original jurisdiction over this Class Action pursuant to 28 U.S.C.

3    § 1332 and the Class Action Fairness Act ("CAFA").  Plaintiff is informed and believes, and

4    based thereon allege, that the amount in controversy in this case, exclusive of interest and costs,

5    exceeds $5,000,000.

6    6.    Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiff Elijah Soto resides

7    in this judicial district, purchased his XR in this district, and a substantial part of the events or

8    omission giving rise to Plaintiff's claims occurred in this district.  In addition, Defendants

9    conduct substantial business in this judicial district, have received substantial benefit from

10   doing business in this judicial district, and have knowingly engaged in activities directed at

11   consumers in this judicial district.  Furthermore, a significant number of Defendants' customers

12   are California residents, and the wrongful acts alleged herein have affected members of the

13   putative Class throughout California.  California has a significant contact or aggregation of

14   contacts to the claims at issue in that Defendants promote, market, and sell the Class Vehicle at

15   issue in California.  Defendants are subject to personal jurisdiction in the State of California

16   and in this judicial district.

17

**PARTIES**

18   7.    Plaintiff Soto is a resident of the State of California.  He currently resides in

19   Sacramento, California.  In 2020, Plaintiff purchased the XR from Defendants online website.

20   8.    Defendants are a Delaware corporation with headquarters in Santa Cruz,

21   California.  Defendants entered into a contract with Representative Plaintiff in the County of

22   Santa Cruz for the sale of the XR.

23   9.    Those Defendants identified as DOES 1 through 100, inclusive, were, at all

24   times herein mentioned, business affiliates, successors, officers, directors, partners, and/or

25   managing agents of the Defendants.  Plaintiff is informed and believes, and on that basis, alleges

26   that, at all times herein mentioned, each of the Defendants identified as DOES 1 through 100,

27   inclusive, conduct violates various California consumer statutes, warranty statues, and common

28   law.

10.    Plaintiff Soto is unaware of the true names and capacities of those Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues Defendants by fictitious names.  Plaintiff will seek leave of court to amend this Complaint when such names are ascertained.  Plaintiff is informed and believes, and, on that basis, alleges that each of the fictitiously-named Defendants is/was responsible in some manner for, gave consent to, ratified, and/or authorized the conduct herein alleged and that the Plaintiff's and Class Members' damages were proximately caused thereby.

11.    Plaintiff Soto is informed and believes and, on that basis, alleges that, at all times herein mentioned, each of the Defendants was the agent and/or the employee of the remaining Defendants and, in doing the acts herein alleged, was acting within the scope of such agency and/or employment.

## **FACTUAL BACKGROUND**

12.    Defendants design, manufacture, market, and warrant several lines of recreational vehicles, often described as single-wheeled electric skateboards.

13.    In January 2018, Defendants released the XR – which is capable of speeds in excess of 20 miles per hour – as "an extended range model for on-and-off-road journeys," and as "an upgrade from the existing Onewheel+. . . ."[3]  Defendants sell the XR over the internet and in retail stores throughout California.

---

[3] Onewheel Press Release, *supra.*

-3-





Figure 1: Image of Onehweel+ XR taken from https://onewheel.com/pages/customize

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

14.    On the XR specific product page, Defendants advertise that the XR "dominate[s] any terrain" and feature riders traversing wet, sandy beaches and rocky roads, as well as launching off various obstacles.



FIRST AMENDED CLASS ACTION COMPLAINT

Figure 2: Screenshots taken from https://onewheel.com/products/xr

15.    To further promote the XR's durability, Defendants post numerous pictures and videos to social media wherein the XR sustains significant abuse but nonetheless continues to function normally.  One such video, advertised on Defendants' official Instagram account, shows individuals throwing an XR off a high tower (easily hundreds of feet off the ground) with the following caption: "[I]t survived! We knew they were built tough, but this is truly spectacular."[4]

16.    Unfortunately, Defendants fail to warrant repairs arising from issues caused by the XR's advertised and ordinary use, oftentimes and without evidence, citing alleged "third-party repairs" as the reason for the denial.  This is so even when no such third-party repairs were conducted, and/or when such repairs were not and could not have been the cause of the underlying issues.

17.    To add insult to injury, Defendants, as part of an unlawful scheme aided by their patent stranglehold on the XR and its components, deny XR owners the ability to receive warranty repairs from service or repair facilities reasonably close to where XRs are sold.  Thus, when any issues arise, XR owners are forced to ship their Class Vehicle to Defendants' sole repair facility in San Jose, California.  When warranty claims are inevitably denied, Defendants oftentimes force XR owners to shell out hundreds of dollars before agreeing to return the boards.

18.    To be sure, Defendants' scheme of denying claims based on alleged third-party repairs, as well as their failure to maintain sufficient repair and service facilities, is intentionally designed to increase revenue by ensuring that all repair costs inure to Defendants.  This scheme also unfairly penalizes XR owners who are forced to pay exorbitant shipping costs.

19.    Accordingly, XR owners, through no fault of their own, are caught in a carefully constructed web whereby they are forced to send their boards to Defendants' sole repair facility, who may wrongfully deny XR owners' warranty claims and thereby force them to spend hundreds of dollars just for the return of their property.  In practice, XR owners are dissuaded

---

[4] See https://www.instagram.com/p/CFfmuebFUTC/

from seeking needed repairs and, in turn, are coerced into continuing their use of the Class Vehicle in a defective and nonconforming condition, subjecting themselves and the public at large to potential death and/or grave bodily injury.

20.    Despite Defendants' warranties and representations that the XR is an all-terrain vehicle and durable, the reality is the XR has not withstood the test.  This colossal failure has resulted in substantial monetary losses, serious safety concerns, a diminution in value, and the loss of use and enjoyment of the Class Vehicle.

21.    Below is a sampling of customer complaints which can be found online:



haare Jan 8, 2020, 8:25 PM

I absolutely love onewheels. I have 3rd XR now. First 2 where broken in less than a year. 2nd one with no custom parts, no modifications. The company claims it is all weather device, however it is not. In ther adds they use it in wet conditions even in snow. It is not able to stand rainy conditions. First 2 of my XR broke because of waterdamage. And the warranty does not pay for this. So beware. They advertise it as all wheather device but it is not. And if it breaks they don't cover it. Here is a short video of my experience to warn others.

Figure 3: Customer review found online at https://community.onewheel.com/topic/8856/warranty-issues-consider-this-before-buying-onewheel

Thomas
⭐☆☆☆☆                                                    08/22/2019

We purchased a one wheel XR for my son less than a year ago. A couple of months after riding it the LED lights went out. Since shipping is so costly due to the weight and having a lithium battery poses additional issues when shipping we decided to wait until it needed full servicing. We looked online for servicing for our one wheel. Plastic pads on the bottom, new wood foot boards, tire and reload your computer for $215. We called one wheel and provided them our board serial # and was told to go online and pay the $215 tune up fee before shipping the item to them. We sent the XR in for the tune up then received an email from one wheel that the cost for this tune up is actually $315 which is NOT mentioned on their website or during our phone call prior with them. They also indicated additional damage charges for the "wrong" screws used. However we've never taken apart the board or made any changes. We responded to one wheel to let them know of our concern of these additional charges given we have not taken apart or done any type of work on the board. They were essentially not helpful and invoiced us for.... $150 casing $113.75 double bearing $52.76 labor. Buyer BEWARE!!!! Your $215 tune up is going to be more like $600. They have no customer service and effectively scam consumers.

FIRST AMENDED CLASS ACTION COMPLAINT

**Victor S**
★☆☆☆☆

01/14/2020

This company is unethical and has terrible customer service. I bought a Onewheel XR has it for just about a year and went to the beach last summer and road it on the tough sand just as it is advertised on their website with them riding it on the tough sand. Four minutes later my board died and I sent it to them and they said it was compromised due to water and wanted over $1000 to fix my board when all I did was use it as advertised. Their boards are not water-resistant. they advertise it as water-resistant but they are not. Their technicians emailed me saying "The battery module is not waterproof. Even with a gasket that is not damaged, exposing the board to wet conditions can allow water to damage the board." This statement put me in distraught because they advertise their boards as being water-resistant but here they clearly say if any water gets in contact with the board it can cause damage. I have tried to dispute with them to fix my board because I did nothing but use it as advertised. However, they simply will not help me

Figure 4: Customer reviews found online at https://www.bbb.org/us/ca/santa-cruz/profile/electric-vehicles/future-motion-inc-1216-358110/customer-reviews

## **FACTS SPECIFIC TO REPRESENTATIVE PLAINTIFF**

22.    Plaintiff Elijah Soto purchased the XR on January 11, 2020 from Defendants' official website after reviewing countless advertisements including pictures and videos produced by Defendants showing the XR functioning on trails, beaches, and riders performing large "drops."  Five months later, on May 15, 2020, Mr. Soto contacted Defendants as a result of the XR's motor cutting in and out while riding on a trial, causing a complete failure and serious safety issues.

23.    On May 20, 2020, Defendants responded to Mr. Soto's email and instructed him to leave the Class Vehicle on the charger overnight.  Defendants, however, provided a shipping label in the event that the "quick fix" did not work.

24.    The next day, Mr. Soto informed Defendants that the Class Vehicle was still not working.  At that time, Defendants provided instructions to ship the Class Vehicle to their repair facility in San Jose, California.

25.    Defendants received the Class Vehicle on June 3, 2020.  After evaluating Mr. Soto's XR, Defendants discovered "that there was a component in the battery circuit that was not functioning properly."[5]  As a result, Defendants replaced the battery circuit and conducted

---

[5] See email dated June 8, 2020, attached hereto as Exhibit A.

FIRST AMENDED CLASS ACTION COMPLAINT

"extensive tests"[6] on the board post-repair to ensure that it was working properly. Defendants then shipped Mr. Soto's Class Vehicle back to his address.

26.    Regrettably, on June 14, 2020, Mr. Soto contacted Defendants after the motor cut off again, this time while Mr. Soto was trail riding. Although not seriously injured, Mr. Soto was once again forced to go through the entire arduous process of shipping the Class Vehicle to Defendants' sole repair facility.

27.    After Defendants performed their so-called evaluations, Defendants emailed Mr. Soto on July 2, 2020, claiming that his board was "powering on and charging as per specification."[7] Nevertheless, Defendants told Mr. Soto that the technicians discovered a new issue during the physical inspection. Namely, that there were multiple stripped screws and loose bolts on the rails as a result of a tire change by a third party, which Defendants claimed was not covered by the warranty.[8]

28.    According to Defendants, "[a]s a result [of the stripped screws], the board will need a rail replacement in order to re-install the necessary parts." Thus, and even though Defendants claimed that they previously conducted "extensive tests"[9] on the XR and did not previously notify Plaintiff of the allegedly stripped screws, and despite no third-party repairs having been made in the meantime, Defendants informed Mr. Soto that the XR would only be returned if he paid them $172.00 for parts and labor, and an additional $80.00 for roundtrip shipping.

29.    Although Mr. Soto refused the alleged repair and demanded the return of his board, Defendants initially refused his requests. In fact, Defendants only returned the XR after Mr. Soto hired counsel and filed his Class Action Complaint. Moreover, and in spite of Defendants' demand for more than $250.00 so that they could "reinstall the necessary parts,"

---

[6] See email dated June 8, 2020, attached hereto as Exhibit A.
[7] See email date July 2, 2020, attached hereto as Exhibit B.
[8] *Id*. Tire changes are an inevitable part of the XR's use since each tire has a shorter lifespan than the XR. Furthermore, and based on information and belief, to the extent there were any stripped screws, those screws were stripped based on Mr. Soto's very use of the XR, including riding it on trails as advertised by Defendants.
[9] See email dated June 8, 2020, attached hereto as Exhibit A.

FIRST AMENDED CLASS ACTION COMPLAINT

Defendants were able to return the XR to Mr. Soto with the original rails and all necessary parts installed – belying Defendants' earlier claim that new rails and labor were needed.

## CLASS COMPLAINT ALLEGATIONS

30.    Plaintiff Soto brings this action both individually and as a Class Action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Defendants on behalf of himself and the Class ("Class") defined below:

Plaintiff brings this Class Action on behalf of himself and the proposed Class, which includes all persons in California who currently own or have owned any new or used Class Vehicle, and who are currently domiciled in California.

31.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are any members of the judiciary assigned to preside over this matter, any officer, director, or employee of Defendants; and any immediate family member of such officer, director, or employee.

(a)    **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Class are so numerous that joinder of all members is impractical, if not impossible, insofar as Plaintiff is informed and believes and, on that basis, alleges that the total number of the Class is, at least, in the hundreds, if not thousands of individuals.  Members in the Class will be determined by and upon analysis of Defendants' customers' records including purchase orders, complaints, and other records maintained by Defendants, as well as communications between Defendants and its Regional Business Center, Repair Facility, and Defendants' affiliates.

(b)    **Commonality**: The Class share a community of interests in that there are numerous common questions and issues of fact, all of which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

(1)    Whether Defendants engaged and/or continue to engage in False Advertising in violation of California Business & Professions Code §§ 17500, *et seq*., by falsely advertising that the vehicle is durable and all terrain and that Defendants would honor their warranties as it relates to Plaintiff and the Class.

(2)    Whether Defendants failed to and/or fail to maintain sufficient service and repair facilities in the State of California reasonably close to all areas where the XR is sold in violation of Manufacturer's Duties under Song-Beverly Consumer Warranty Act § 1973.2(a)(1)(A).

(3)   Whether Defendants violated and/or continue to violate Consumer Legal Remedies Act §§ 1750, *et seq.,* by falsely representing that the vehicle is durable and all terrain and that Defendants would honor their warranties as it relates to Plaintiff and the Class.

(4)   Whether Defendants engaged and/or continue to engage in Unfair Business Practices in Violation of California Business & Professions Code §§ 17200, *et seq.,* by voiding warranties based on third-party repair attempts, through its use of unfair, deceptive, untrue, or misleading advertising, and failure to maintain sufficient repair facilities as it relates to Plaintiff and the Class.

(5)   Whether Defendants breached and/or continue to breach the express warranty that the Class Vehicle is durable and all terrain and that performance is not substantially impaired by the very use of the XR as marketed and advertised.

(6)   Whether Defendants negligently misrepresented that the XR is durable and all terrain and that Defendants would honor their warranties as it relates to Plaintiff and the Class.

(7)   Whether Defendants were unjustly enriched by marketing and selling the XR as a durable and an all-terrain vehicle when the very use of the Class Vehicle as marketed and advertised would substantially impair its use, safety, enjoyment, and value.

(c)   **Typicality**: The Class claims are typical of the claims of the Plaintiff. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state laws as alleged herein.

(d)   **Superiority of Class Action**: Since the damages suffered by individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it impractical for class members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual class member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other class members who are not parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

(e)   **Adequacy of Representation**: Plaintiff is an adequate representative of the Class, in that Plaintiff's claims are typical of those of the Class. Plaintiff has the same interests in the litigation of this case as the Class. Plaintiff is committed to the vigorous prosecution of this case, and has retained competent counsel, experienced in litigation of this nature. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to the class as a whole. Plaintiff anticipates no management difficulties in this litigation.

-11-

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**False Advertising Law**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**
**(On Behalf of the Plaintiff and the Class)**

32.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

33.     California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq*.) ("FAL"), prohibits unfair, deceptive, untrue, or misleading advertising.  The Cal. Bus. Prof. Code § 17500 specifically prohibits:

> [a]ny person . . . to make or disseminate or cause to be disseminated from this state before the public in any state . . . in any advertising device . . . or in any manner or means whatever, including over the internet any statement concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known or which by exercise of reasonable care should be known, to be untrue or misleading.

34.     Defendants falsely advertised and promoted over the internet and in their promotional materials that the Class Vehicle is extremely durable and all terrain and that Defendants would honor their warranties.

35.     These advertisements, inducements, and representations on its blogs, websites, and other promotional materials, come within the meaning of false advertising as defined in Cal. Bus. & Prof. Code §§ 17500, *et seq*., in so much that they were intended as inducements for board sport enthusiasts to purchase the XR.

36.     Defendants knew or should have known that these statements were deceptive and misleading because repair issues arise from its ordinary and advertised use.  Defendants' false advertisements were calculated to induce Plaintiff and the Class to purchase the Class Vehicle — which they otherwise would not have purchased or would have otherwise purchased the Class Vehicle for less — to increase profits and ratings.

37.     Defendants' actions caused injury to Plaintiff and the Class because: a) they would not have purchased the product if they had known that the Class Vehicle did not have the durability, functionality, or performance features as expressly advertised and warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; (c) they purchased a Class Vehicle that did not have the durability, functionality, performance features, qualities, or value promised by Defendants; and (d) are forced to pay for repairs that should be covered under warranty that are implied based on the false advertising.

38.     Defendants have improperly obtained money or else caused Plaintiff and the Class to unnecessarily expend time and resources to ship and repair the XR for issues that should have been covered under the warranty.  Thus, Plaintiff requests that Defendants return this money to Plaintiff and the Class and enjoin Defendants from continuing to violate Cal. Bus. & Prof. Code §§ 17500, *et seq*., in the future.

39.     Pursuant to Cal. Code Civ. Proc. § 1021.5, Plaintiff also requests that the Court award reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Manufacturer's Duties Under the Song-Beverly Consumer Warranty Act**
**(Cal. Civ. Code §§ 1790 *et seq*.)**
**(On Behalf of the Plaintiff and the Class)**

40.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

41.     Defendants' Class Vehicle is a "consumer good" and Defendants are a "manufacturer" under Cal. Civ. Code § 1791.

42.     Defendants manufacture the Class Vehicle in California, which is sold in retail stores throughout the State.

43.     In connection with the sale of its Class Vehicle, Defendants provide express warranties that "the PRODUCT, other than the footpad, tire and battery pack, will be free from

-13-

defects in materials and worksmanship for a period of 12 months / 2000 KM (1243 miles), whichever comes first. The warranty for the footpad, tire, and battery pack is 6 months/1000 KM (622 miles)." Defendants' purport to void this warranty in the event of any unauthorized third-party repairs.

44.     Pursuant to Cal. Civil Code § 1793.2(a)(1) and (3), Defendants are obligated to (a) "[m]aintain sufficient service and repair facilities reasonably close to all areas where [the XRs] are sold to carry out the terms of [its] warranties or designate and authorize in this state as service or repair facilities independent repair or service facilities reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties . . ." and (b) "[m]ake available to authorized service and repair facilities sufficient literature and replacement parts to effect repairs during the express warranty period."

45.     Despite these obligations, Defendants maintain and designate a single service and repair facility in San Jose, California, which is not public facing.

46.     As a result, the Class is denied the benefit of authorized service and repair facilities reasonably close to where Defendants' goods are sold and are forced to pay exorbitant shipping fees for any repairs not covered by a warranty.[10]

47.     Based on Defendants' continuing breach of its obligations under Cal. Civil Code § 1793.2(a), the Class Members are entitled to reimbursement for all shipping costs and injunctive relief.

### THIRD CAUSE OF ACTION
**Violation of the California Consumer Legal Remedies Act**
**(Cal. Civ. Code §§ 17500, *et seq.*)**
**(On Behalf of the Plaintiff and the Class)**

48.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

49.     This cause of action is brought pursuant to the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17500, *et seq.*

---

[10] Defendants' claim that XR warranties are voided by any third party repairs coerces Class Members into shipping the Class Vehicles to Defendants for all repairs, whether warranted or not.

50.     Plaintiff and all Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

51.     The sale of the Class Vehicles to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

52.     The Class Vehicle purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

53.     As alleged herein, Defendants falsely advertised that the Class Vehicle is extremely durable and all terrain and that Defendants would honor their warranties. Specifically, Defendants violated Cal. Civ. Code § 1770(a)(7), which prohibits "[r]epresenting that goods are of a particular standard, quality, or grade . . ."; § 1770(a)(14) "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

54.     Plaintiff relied on Defendants' false representations that the Class Vehicle is durable and all terrain and that Defendants would honor their warranties.  Plaintiff would not have purchased the Class Vehicle or would have paid significantly less for the Class Vehicle, but for Defendants' unlawful conduct.  The Class was likely to also have relied upon Defendants' deceptive advertising and promotional materials.  Plaintiff and the Class acted reasonably when they purchased the Class Vehicle based on Defendants' false representations.

55.     As a result of Defendants' false representations, Plaintiff and the Class were injured because: a) they would not have purchased the product if they had known that the Class Vehicle did not have the functionality or performance features as expressly and impliedly warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; (c) they purchased a Class Vehicle that did not have the durability, functionality, performance features, qualities, or value promised by Defendants; and (d) are forced to pay for repairs that should be covered under the express and implied warranty of merchantability.

-15-

56.     Under Cal. Civ. Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA.  On September 3, 2020, Plaintiff sent notification to Defendants via a demand letter of his intent to pursue penalties under the CLRA, which will provide Defendants an opportunity to cure the unlawful practice, including to stop falsely advertising that the vehicle is durable and all terrain and stop denying repairs covered under the warranty that is implied based on the false advertising, all of which is consistent with Cal. Civ. Code § 1782.  Because Defendants failed to take corrective action within 30 days of receipt of the notice and demand letter, Plaintiff also requests damages as permitted under Cal. Civ. Code § 1782(d).

**FOURTH CAUSE OF ACTION**
**Unfair Business Practices**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.,)**
**(On Behalf of the Plaintiff and the Class)**

57.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

58.     California's Unfair Business Practices Law (Cal. Bus. & Prof. Code § 17200, § *et seq*.) ("UCL") defines unfair business practice to include "unlawful, unfair, or fraudulent" act or practice as well as "any unfair, untrue, or misleading" advertising.  A business act is unlawful if it violates any other law or regulation.

59.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.  A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.  A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

60.     Defendants have engaged in fraudulent and unfair business practices as it relates to the marketing, sale, and warranting of the XR.

61.     The business acts and practices alleged herein are unfair because they caused Plaintiff and the Class to falsely believe that Defendants were offering a durable and an all-

-16-

terrain Class Vehicle, yet issues arise due to its ordinary and advertised use that make the Class Vehicle inoperable or else result in costly repairs that should, but are not, covered under the warranty.  This deception was likely to have induced reasonable consumers, including Plaintiff, to purchase Defendants' Class Vehicle, which they otherwise would not have purchased, or would have paid substantially less for the Class Vehicle.

62.     The gravity of the harm to Plaintiff and the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, and/or motives of Defendants for engaging in such deceptive acts and practices.  By committing the acts and practices alleged herein, Defendants engaged in, and continue to engage in, unfair business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, et seq.

63.     Defendants have also violated the "unlawful" prong of the UCL by violating several California laws, as alleged herein, including the FAL and CLRA, and for failure to maintain additional service and repair facilities, make available sufficient literature and replacement parts, or else secure authorized repairs facilities in violation of § 1793.2(a) under the Song-Beverly Consumer Warranty Act.  Defendants have also violated Federal law by purporting to void warranties based on third party repair attempts.

64.     Defendants have also violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that the Class Vehicle is durable and all terrain and that Defendants would honor their warranties.

65.     As a result of Defendants' unlawful acts, Plaintiff and the Class were injured because they: a) they would not have purchased the product if they had known that the Class Vehicle did not have the functionality or performance features as expressly warranted by Defendants or they would have paid substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; (c) they purchased a Class Vehicle that did not have the durability, functionality, performance features, qualities, or value promised by Defendants; and (d) are forced to pay for repairs that should be covered under the implied warranty of merchantability. Additionally, the public at large is put at risk of injury and/or death by Defendants' practices,

-17-

1  which dissuades Class Members from seeking service and repair of their potentially defective

2  and nonconforming boards.  Therefore, Plaintiff requests that this Court cause Defendants to

3  return this money to Plaintiff and the Class, and to enjoin Defendant from continuing to violate

4  the UCL as alleged herein.

5  **FIFTH CAUSE OF ACTION**
   **Breach of Express Warranty**

6  **(On Behalf of the Plaintiff and the Class)**

7  66.    Plaintiff, individually and on behalf of the Class, incorporates in this cause of

8  action each and every allegation of the preceding paragraphs, with the same force and effect as

9  though fully set forth herein.

10  67.    In connection with the sale of the Class Vehicle, Defendants issued express

11  warranties that the Class Vehicle is durable and all terrain and that Defendants would honor

12  their warranties.

13  68.    Defendants' affirmation of fact and promise in the advertisements and

14  promotional materials that the Class Vehicle is durable and all terrain and that Defendants

15  would honor their warranties became the basis of the bargain between Defendants and Plaintiff

16  and the Class, thereby creating express warranties that the Class Vehicle would conform to

17  Defendants' affirmation of fact, representations, promise, and description.

18  69.    Similarly, Defendants made written express warranties and expressly warranted

19  to Plaintiff and the Class, that the Class Vehicles would be of high quality, at a minimum would

20  work properly and comfortably, and would be free from defects and fit for normal use.

21  Defendants also expressly warranted that certain defects, including repair issues that arose from

22  its ordinary and marketed use would be remedied at no cost to the purchaser.

23  70.    Defendants breached these warranties, thus denying Plaintiff and the Class the

24  benefit of their bargain. Put simply, Defendants' repair practices and the Class Vehicle at issue

25  here does not live up to Defendants' express warranties.

26  71.    Plaintiff and the Class were injured because: a) they would not have purchased

27  the product if they had known that the Class Vehicle did not have the durability, functionality

28  or performance features as expressly warranted by Defendants or they would have paid

-18-

substantially less for the Class Vehicle; (b) they paid a premium price for the Class Vehicle as a result of Defendants' false warranties and misrepresentations; (c) they purchased a Class Vehicle that did not have the functionality, performance features, qualities, or value promised by Defendants; and (d) are forced to pay for repairs that should be covered under implied and express warranties.

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of the Plaintiff and the Class)**

72.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

73.     Defendants represented and led consumers to believe that the Class Vehicle is extremely durable and all terrain and that Defendants would honor their warranties.

74.     Defendants knew or should have known that these statements were deceptive and misleading at the time they were made.

75.     Defendants materially misrepresented and/or actively concealed material facts, including that the Class Vehicle is not durable or all terrain and that Defendants would not honor their warranties.

76.     Based on the above, Plaintiff and the Class paid a premium for the Class Vehicle. Plaintiff and the Class members were unaware of the truth and would not have acted as they did if they had known of the concealed and/or otherwise misrepresented facts.

77.     Due to the concealment and misrepresentation of material facts regarding the Class Vehicle, Plaintiff and the Class sustained damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

78.     Plaintiff, individually and on behalf of the Class, incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

-19-

79.    As a result of Defendants' wrongful and deceptive conduct, Plaintiff and the Class have suffered a detriment while Defendants have received a benefit.

80.    Plaintiff and the Class have conferred a benefit on Defendants by purchasing, at a premium, the Class Vehicle that is not durable or all terrain and paying for repairs for issues that arise from its advertised and ordinary use that should be covered under the warranty. Defendants received a premium price benefit and/or additional sales from Plaintiff and the Class as a result of this unlawful conduct.

81.    Additionally, Defendants' failure to maintain sufficient service and repair facilities, make available sufficient service literature and replacement parts, or else secure authorized repair facilities – combined with Defendants' threat to void any warranty for any work done by any third-parties – results in both significant cost savings and increased revenues, all the while Plaintiff and the Class are saddled with exorbitant shipping costs necessary to maintain Defendants' unlawful scheme.  Defendants appreciate or have knowledge of such benefit.

82.    Defendants' retention of this benefit violates principles of justice, equity, and good conscience.  Indeed, Defendants should not be allowed to retain the premium price profits and/or additional sales generated from the sale of products that were unlawfully marketed, advertised and promoted.  Allowing Defendants to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to devise more unlawful schemes and misrepresent key characteristics of their products in order to increase revenues.

83.    Plainly stated, it would be inequitable and unjust for Defendants to retain the benefit of revenues obtained from purchases and repairs of its Class Vehicle, because Defendants materially misrepresented the warranties, functionality, performance features, qualities, and value.

Thus, Defendants are in possession of funds that were wrongfully retained from Plaintiff and the Class that should be disgorged as illegally gotten gains.

-20-

1

**PRAYER FOR RELIEF**

2

**WHEREFORE**, Plaintiff demands judgment as follows:

3    A.    An order declaring that this action may be maintained as a Class Action pursuant

4    to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), and for an order certifying this case as a class

5    action and appointing Plaintiff as representative of the Class;

6    B.    A declaration that Defendants' actions, as described herein, violate the claims

7    described herein;

8    C.    An award of injunctive and other equitable relief as is necessary to protect the

9    interests of Plaintiff and the Class, including, *inter alia*, an order prohibiting Defendants from

10    engaging in the unlawful act described above;

11    D.    An award to Plaintiff and the Class of restitution and/or other equitable relief,

12    including, without limitation, disgorgement of all profits and unjust enrichment that Defendants

13    obtained from Plaintiff and the Class as a result of its unlawful, unfair and fraudulent business

14    practices described herein;

15    E.    For judgment for Plaintiff and the Class on their claims in an amount to be

16    proven at trial, for compensatory damages caused by Defendants' practices; along with

17    exemplary damages to each Class member for each violation;

18    F.    For pre-judgment and post-judgment interest as provided for by law or allowed

19    in equity;

20    G.    For an order awarding Plaintiff and the Class their attorneys' fees and costs; and

21    H.    Such other and further relief as may appear necessary and appropriate.

22    Respectfully Submitted,

23

24

25

26

27

28

-21-

LAW OFFICES OF CONNOR W. OLSON

Dated:  November 6, 2020

By: _____

**Connor W. Olson, SBN 291493**
520 Capitol Mall, Suite 150
Sacramento, CA 95814
office@cwo-law.com
Phone: 916-905-7276

***Tiangay M. Kemokai,* SBN 331807**
*Tiangay Kemokai Law, P.C.*
520 Capitol Mall, Suite 150
Sacramento, CA 95814
info@tiangaykemokai-law.com
Phone: 916-213-0908

**Attorneys for Representative Plaintiff
and Putative Class**

-22-

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff and the Classes hereby demand trial by jury of all issues triable as of right by

3    jury.

4

5                                          **LAW OFFICES OF CONNOR W. OLSON**

6

7

8    Dated:  November 6, 2020              By:_____

9                                          *Connor W. Olson*, **SBN 291493**
                                           520 Capitol Mall, Suite 150
10                                         Sacramento, CA 95814
                                           office@cwo-law.com
11                                         Phone: 916-905-7276

12                                         *Tiangay M. Kemokai*, **SBN 331807**
                                           *Tiangay Kemokai Law, P.C.*
13                                         520 Capitol Mall, Suite 150
                                           Sacramento, CA 95814
14                                         info@tiangaykemokai-law.com
                                           Phone: 916-213-0908

15                                         **Attorneys for Representative Plaintiff**
                                           **and Putative Class**
16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

**From:** Elijah Soto ████████████████
**Date:** June 8, 2020 at 5:04:38 PM PDT
**To:** Future Motion Inc <support@onewheel.com>
**Subject: Re: Form Submitted: I need technical help with my Onewheel**

Thank y'all so much! I really appreciate every you guys do. Stoked to get back to shredding.

On Jun 8, 2020, at 9:43 AM, Future Motion Inc <support@onewheel.com> wrote:

Hi Elijah,

Thank you so much for your patience! I just wanted to let you know your board is currently being shipped back to you. The FedEx tracking number is 770524942166.

You sent your board in due to it not powering on. After checking in with our techs, it appears that there was a component in the battery circuit board that was not functioning properly. Our team replaced the battery circuit board under warranty. We extensively tested your board post repair to ensure that it was operating properly.

Have fun riding! Let us know if you need help with anything else!

Best,
Onewheel Team

On Thu, 21 May at 4:23 PM , Future Motion Inc <support@onewheel.com> wrote:
Hi Elijah,

Thanks for that information! We've confirmed this issue is not easy to troubleshoot remotely and we will have to get this board over to our technicians.

The process to have your board evaluated by our technicians in our facility in San Jose, California can be found below:

Attached to this email is a prepaid shipping label to get your board sent in to our facility. As soon as your board arrives it will be evaluated by our team of technicians. They will extensively test and evaluate the components of your board in order to replicate and/or find any issues, ensuring it is performing properly and up to specifications. Once they finish the evaluation, a report will be sent to us about the findings. **This check-in process usually takes 24-72 business hrs, sometimes longer depending on the issue.** Once this report is ready, we will reach out to you with its content information.

Repairs:

-All **In Warranty** cases where Issues are found will be fixed free of cost, including shipping.
-All **Out of Warranty** cases where Issues are found, will be fixed at a cost upon your approval. If you do not approve of the cost, the board can be returned to you at the cost of shipping.
-All **Evaluations** that come in and pass evaluation are subject to shipping fees to return the board to the owner,

*We encourage you to read about our 12 and/or 6 month warranty policy here before sending your board in which can be found in your instruction manual or here.

Please see details of this process:

- Future Motion will not return any replaced parts. All parts will be disposed of appropriately in an environmentally friendly way, at our cost.
- You should remove any 3rd party accessories or aftermarket materials. Failure to do so may incur a penalty charge.

- Any third-party accessories shipped to us cannot be guaranteed and if lost or damaged, it might not get replaced. Return of these items may incur an additional shipping charge.
- Please note that tampering with the internal components of the board or any visible serial numbers can lead to a voided warranty and/or refusal of service.
- Future motion reserves the right to hold an RMA until the repair has been verified

When packaging/shipping:
To return your board safely you must overpack your Onewheel.

1. You will need to pack your board in an outer box, if you don't' have the brown outer box the board came with, you can find boxes at most local hardware stores. You will need to purchase one with approximately the dimensions: 31"x13"x11". One alternative is to wrap the entire Onewheel product box. Doing so will help ensure a safe and expedited arrival and make the board less prone to theft during shipping by being identifiable.
2. You will need to drop the board off at a FedEx facility or location with the label attached to the box. Please use the attached prepaid shipping label as it will be needed to ship via FedEx Ground.

Let me know if you have any questions. We will do our best to get you back to riding soon!

Best,
Onewheel Team

> On Thu, 21 May at 2:51 PM , Elijah.soto.82 ████████████████ wrote:
> Hi, so I did leave my board on its charger over night and unfortunately I am still getting nothing from it once I unplug it and I try to turn it on. The best shipping address for me is ████████
> ████ . For phone number it's ██████████ . Thank you again, I appreciate you and your teams help!

> On May 20, 2020, at 3:37 PM, Future Motion Inc <support@onewheel.com> wrote:
>
> Hi Elijah,
>
> Thank you for calling in today! We are sorry to hear you are having issues with your board.
>
> If the board does not respond to being left on the charger overnight, then we will need to get the board sent in to our facility. In your response, please confirm your best shipping address and phone number.
>
> Let us know if you need help with anything else! We will do our best to get you back to riding soon!
>
> Best,
> Onewheel Team

> On Fri, 15 May at 3:27 PM , Elijah.soto.82 ████████████████ wrote:

## Customer Support Contact Form

| | |
|---|---|
| **First Name** | Elijah |
| **Last Name** | Soto |
| **Enter email address** | ████████ |
| **Confirm Email** | ████████ |
| **(123) 456 7890** | ████████ |
| **What do you need help with?** | I need technical help with my Onewheel |
| **Serial Number (10 Digit)** | 1950095969 |
| **Have you submitted diagnostics through the App?** | No (If not, please send after submitting this form) |
| **Address** | ████████ |
| **Please tell us what you need help with** | I was riding my Onewheel got off for a second to put my dogs in my house then came back outside to get back on my Onewheel it was still turned on I didn't turn it off and the motor cut and now it won't turn on. |



| Locale | US |
| --- | --- |

Manage your email preferences.
POWr Inc. 44 Tehama St, San Francisco, CA 94105

# EXHIBIT B

**From:** Future Motion Inc <support@onewheel.com>
**Date:** July 2, 2020 at 10:47:32 AM PDT
**To:** Elijah ████████████
**Subject: Form Submitted: I need technical help with my Onewheel**
**Reply-To:** Future Motion Inc <support@onewheel.com>


Hi Elijah,

Thanks for your patience.

The techs extensively tested your board again to attempt to replicate the issue, however, they found that your board was powering on and charging as expected per specification. The technician also test rode your board in multiple different scenarios to see how the board would perform and experienced no shut offs.

During the physical inspection, they found that as a result of a tire change done by a third party, there are multiple stripped screws and loose bolts on the rails. As a result, the board will need a rail replacement in order to re-install the necessary parts.

Damage resulting from alterations is not within the scope of warranty policy and below is a breakdown of the cost of repairs and shipping:

| | |
|---|---|
| Rail Set | $93.28 |
| Rebuild | $26.38 |
| Labor | $52.76 |
| Roundtrip Shipping | $80.00 |
| Total | $252.42 |

Feel free to reach out with any questions. Once you approve this quote I'll send you the invoice and upon payment, the repair on your board will resume. We are looking forward to getting you back riding soon!

Best,
Andi
Onewheel Team

> On Mon, 29 Jun at 1:06 PM , Elijah ████████████ wrote:
> Hi, I just wanted to check in on the status of my board. Hope everything is going good. Can't wait to get back to riding!

On Jun 25, 2020, at 10:10 AM, Future Motion Inc
<support@onewheel.com> wrote:

Hi Elijah,

Thank you so much for letting us know.

I shared that information with the technicians, and
they are continuing the evaluation and testing. I
will reach out to you soon with more information!

Feel free to reach out with any questions! We will
get you back to riding soon.

Best,
Onewheel Team

On Wed, 24 Jun at 12:33 PM ,
Elijah.soto.82
<elijah█████████ wrote:
I was also not given any error
message on my onewheel app.

On Jun 23, 2020, at
5:32 PM, Future
Motion Inc
<support@onewheel.com>
wrote:

Hi
Elijah,

Thanks
for your
patience!

The
techs
are
asking
for
some
more
information
about
the
issue
with
your
board.
After it
died

during your ride, did you plug it in to charge? If so, for how long? Was the board completely unresponsive after charging if you did charge it? Did you receive any error messages on the app?

Best,
Onewheel Team

1

## CERTIFICATE OF SERVICE

2

    I, Connor Olson, hereby declare under penalty of perjury as follows: I am counsel of
3
record for Plaintiff in this case.  On November 6, 2020, I electronically filed the foregoing with
the Clerk for the United States District Court for the Northern District of California using the
4
CM/ECF system, which shall send electronic notification to counsel of record.

5

    Executed on November 6, 2020                    _/S/ Connor W. Olson_
6
                                                    Connor W. Olson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE