UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH SOTO, | Case No. 20-cv-06982-SVK |
| Plaintiff, | **ORDER REMANDING CASE TO STATE COURT AND TERMINATING AS MOOT DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE** |
| v. | |
| FUTURE MOTION, INC., | |
| Defendant. | Re: Dkt. Nos. 20, 23 |

In 2020, Plaintiff Elijah Soto purchased a Onewheel+ XR single-wheeled electric skateboard (the "XR" or "Class Vehicle") from the website of Defendant Future Motion, Inc. Dkt. 14 (First Amended Complaint, corrected at Dkt. 30 ("FAC")) ¶ 22.  Plaintiff brings this product defect action on behalf of a class of XR owners.  *Id.* ¶¶ 1, 30.  Defendant filed a motion to dismiss the FAC and a motion to strike the class allegations in the FAC. Dkt. 20, 23.  After briefing on Defendant's motions was complete, at the Court's request, the parties filed an additional joint brief addressing whether the Court has subject matter jurisdiction over this case. Dkt. 38, 39.  All parties have consented the jurisdiction of a magistrate judge.  Dkt. 7, 13. Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for determination without oral argument.  For the reasons that follow, the Court concludes that it lacks subject matter jurisdiction and therefore **REMANDS** this case to the Superior Court of California for the County of Santa Cruz.

## I.    BACKGROUND

This discussion of the background facts is based on the allegations of the FAC.  Defendant designs, manufactures, markets, and sells several models of single-wheeled skateboards. FAC ¶ 12.  Defendant released the XR in January 2018, and Defendant sells the XR over the internet and in retail stores.  *Id.* ¶ 13.  After reviewing advertisements for the XR, Plaintiff, who is

a resident of California, purchased an XR in January 2020 from Defendant's official website. *Id.* ¶¶ 7, 22.

In May 2020, the motor on Plaintiff's XR cut in and out while he was riding on a trail. *Id.* ¶ 22.  After contacting Defendant and following its advice to leave the XR on the charger overnight, which did not fix the problem, Plaintiff followed Defendant's instructions to ship his XR to Defendant's repair facility in San Jose, California.  *Id.* ¶¶ 23-24.  Defendant found a component in the battery circuit that was not functioning properly.  *Id.* ¶ 25.  Defendant then replaced the battery circuit, tested the board, and shipped it back to Plaintiff.  *Id.*

In June 2020, the motor on Plaintiff's XR cut off again while Plaintiff was trial riding. *Id.* ¶ 26.  Plaintiff then repeated the process of shipping his board to Defendant's repair facility in San Jose.  *Id.*  After evaluating Plaintiff's board, Defendant claimed it was powering on and charging properly, but Defendant told Plaintiff it had discovered a new problem.  *Id.* ¶ 27. According to Defendant, there were multiple stripped screws and loose bolts on the rails of the board as a result of a tire change by a third party, which Defendant claimed was not covered by the product's warranty.  *Id.*  Defendant informed Plaintiff that the XR would be returned only if he paid Defendant $172 for parts and labor for a rail replacement and $80 for roundtrip shipping.  *Id.* ¶ 28.  After Plaintiff refused the repair and demanded return of his board, Defendant initially demanded more than $250 to reinstall the necessary parts.  *Id.* ¶ 29.  Defendant did not return Plaintiff's XR until after he hired counsel and filed his original complaint.  *Id.*  The returned board had the original rails and all necessary parts installed.  *Id.*

Plaintiff filed the original complaint in this case in Santa Cruz County Superior Court on September 8, 2020.  Ex. A to Dkt. 1-1 (the "Original Complaint").  Defendant removed the case to this Court on October 7, 2020.  Dkt. 1.  After Defendant filed a motion to dismiss and a motion to strike directed at the Original Complaint, Plaintiff filed the FAC on November 6, 2020.  Dkt. 14 (later corrected at Dkt. 30).  Following filing of the FAC, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. 16.  Defendant later withdrew that motion, but the parties invited the Court to request further briefing on the issue of subject matter jurisdiction.  Dkt. 17.

2

Defendant then filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 20.  Defendant also moved to strike the class allegations in the FAC. Dkt. 23.  Plaintiff opposes both motions.  Dkt. 34, 35.  Following completion of the briefing on the motions to dismiss and strike the FAC, as directed by the Court, the parties submitted a joint supplemental brief addressing whether the Court has subject matter jurisdiction over this case. Dkt. 38, 39.

## II.      DISCUSSION

### A.      Subject matter jurisdiction

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  It is presumed that a case lies outside federal subject matter jurisdiction, and the burden of establishing otherwise rests on the party seeking to assert jurisdiction.  *Id.* Federal courts have an independent duty to ensure that they do not exceed the scope of their jurisdiction, even if no party raises a jurisdictional challenge.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

In its Notice of Removal of this case to federal court, Defendant claimed that federal subject matter jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  Dkt. 1 at 2.  In the parties' supplemental brief on subject matter jurisdiction, the parties likewise premise their jurisdictional arguments on CAFA.  *See, e.g.,* Dkt. 39 at 1, 9. "Under CAFA, a federal court may exercise subject matter jurisdiction over a class action where (1) the parties are minimally diverse; (2) the proposed class has at least 100 members; and (3) the amount in controversy exceeds $5 million."  *Prado v. Dart Container Corp. of Cal.*, 373 F. Supp. 3d 1281, 1285 (N.D. Cal. 2019) (citing 28 U.S.C. § 1332(d)).

"[N]o antiremoval presumption attends cases invoking CAFA" because "CAFA's primary objective is to ensure Federal court consideration of interstate cases of national importance."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (internal quotation marks and citations omitted).  Nevertheless, even under CAFA, "the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction."  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006).  Accordingly, as the removing party, Defendant bears the

United States District Court
Northern District of California

United States District Court
Northern District of California

1  burden of proving that the Court has subject matter jurisdiction.  This fact "does not mean that the

2  notice of removal must in and of itself meet this burden" because "a shortcoming in the notice of

3  removal concerning the amount in controversy is not jurisdictional, at least not until the movant

4  has an opportunity to correct any perceived deficiency in the notice."  *Academy of Country Music*

5  *v. Continental Cas. Co.*, -- F.3d --, 2021 WL 1082850, at *8 (9th Cir. 2021).

6  **B.**     **CAFA's diversity of citizenship requirement**

7  CAFA's requirement of minimal diversity of citizenship between the parties is satisfied

8  where "any member of a class of plaintiffs is a citizen of a State different from any defendant."

9  28 U.S.C. § 1332(d)(2)(A); *Chan Healthcare Grp. PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d

10  1133, 1137 (9th Cir. 2017).

11  For diversity purposes, a corporation is deemed a citizen of both the state where it is

12  incorporated and the state where it has its principal place of business.  *Hertz Corp. v. Friend*, 559

13  U.S. 77, 80 (2010); 28 U.S.C. § 1332(c)(1).  It is undisputed that Defendant is a citizen of

14  California for diversity purposes.  Original Complaint ¶ 7; Dkt. 1-2 (de la Rua Decl.) ¶ 2.

15  The question the Court must determine is therefore whether any member of the proposed

16  class is a citizen of a state other than California.  As defined in the original state court complaint in

17  this case, the class included "all persons in the United States and its Territories who, during the

18  applicable Class Period, owned any new or used Class Vehicle in California."  Original Complaint

19  ¶ 25.  However, in the FAC, which Plaintiff filed after removal, the class is defined as "all persons

20  in California who currently own or have owned any new or used Class Vehicle, and who are

21  currently domiciled in California."  FAC ¶ 30.

22  Generally, a "natural person's state citizenship is … determined by her domicile, not her

23  state of residence."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  "A

24  person's domicile is her permanent home, where she resides with the intention to remain or to

25  which she intends to return."  *Id.*  As a result, if the Court can consider the FAC, it must conclude

26  that CAFA's minimal diversity is not met since all class members as well as Defendant are

27  "domiciled" in California and therefore are California citizens for diversity purposes.

28

### 1.      Legal standard for determining which complaint controls

"Ordinarily, post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Broadway Grill, Inc. v. Visa, Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017).  The Ninth Circuit recognizes an exception to this general rule that permits a court to consider a post-removal amended complaint if it clarifies, rather than changes, the plaintiff's original allegations. *Benko v. Quality Loan Serv. Corp.* 789 F.3d 1111 (9th Cir. 2015); *see also Broadway Grill*, 856 F.3d at 1276.  The Ninth Circuit has clarified that *Benko* provides only a "small exception" that allows consideration of an amendment that "served only to provide some amplification, for federal jurisdictional purposes, of the nature of plaintiffs' allegations." *Broadway Grill*, 856 F.3d at 1277.  It does not permit consideration of an amendment that "changed the definition of the class itself." *Id.*  "*Benko* allowed amendments for purposes of clarifying the relationship between the parties and the effect of the class claims on particular defendants," not changes that "amended [the] class definition, add or remove defendants, or add or remove claims in such a way that would alter the essential jurisdictional analysis." *Id.* at 1279.

### 2.      The operative complaint in this case

"*Broadway Grill* has not completely cured the 'uncertainty … as to when post-removal amendments may be allowed.'" *Borgia v. Bird Rides, Inc.*, No. CV 18-9685-DG (FFMx), 2019 WL 3814280, at *4 (C.D. Cal. Aug. 13, 2019).  However, for several reasons, the Court concludes that it may consider the FAC in this case in determining whether the Court has subject matter jurisdiction.

First, although the FAC in one respect changed the class definition, it also clarified that definition.  The FAC narrowed the class definition insofar as it replaced the language "all persons in the United States and its Territories" with language limiting the class to persons "currently domiciled in California."  But to focus only on that clause of the original class definition would be to ignore the ambiguous phrase "owned any new or used Class Vehicle in California" in the original class definition.  Courts in this District have found similar class definitions to be defective.  For example, class allegations defining the class as all persons within the United States

who own a 20-inch Aluminum iMac were stricken because "[t]his definition necessarily includes individuals who did not purchase their [computer], individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages, and such individuals would lack standing." *Sanders v. Apple Inc.*, 472 F. Supp. 2d 978, 991 (N.D. Cal. 2009). Another court found a class definition that included "[a]ll persons in the State of California who, within four years prior to the filing of this Complaint, purchased Defendant's Products" to be "ambiguous." *Labrado v. Method Products, PBC,* No. 16-cv-05905-LB, 2016 WL 6947337, at *4 (N.D. Cal. Nov. 28, 2016). The plaintiff in that case took the position that the class was limited to California citizens. *Id.* The defendant argued that the class could include citizens of other states, former citizens of California, and persons who are not citizens of the United States who were in California when the purchased the cleaning products at issue. *Id.* After noting the *Benko* exception to the general rule that the propriety of removal must be determined solely on the basis of the pleadings filed in state court, the court gave the plaintiff leave to amend the complaint to clarify issues pertaining to federal jurisdiction under CAFA. *Id.* The class definition in the Original Complaint in this case was similarly in need of clarification insofar as it defined the class in terms of those who "owned [the] Class Vehicle in California." The FAC provides the necessary clarity to the class definition.

Second, the FAC's clarification of the class definition is consistent with other allegations in the Original Complaint that focused on California. Both the Original Complaint and the FAC allege only California tort claims. Moreover, the case is focused on harm suffered in California. *See, e.g.,* FAC ¶ 6 ("a significant number of Defendants' customers are California residents, and the wrongful acts alleged herein have affected members of the putative Class throughout California"); *id.* ("California has a significant contact or aggregation of contacts to the claims at issue in that Defendants promote, market, and sell the Class Vehicle at issue in California"); Original Complaint ¶ 8 (Defendant's conduct "violates various California consumer statute, warranty statues [sic], and common law"); *id.* ¶ 27(b)(2) ("Defendants failed and/or fail to maintain sufficient service and repair facilities in the State of California reasonably close to all areas where the XR is sold"). As such, this appears to be "a quintessential California case," which

United States District Court
Northern District of California

1   is consistent with the clarification of the class definition in the FAC.  *See Borgia*, 2019 WL

2   3814280, at *4.

3           Third, the Original Complaint did not address CAFA's requirements, which is

4   understandable since it was filed in state court.  "By amending the complaint in these

5   circumstances, plaintiffs can provide a federal court with the information required to determine

6   whether a suit is within the court's jurisdiction under CAFA."  *Benko*, 789 F.3d at 1116.  For

7   example, the Original Complaint does not contain facts from which it can be determined whether

8   exceptions to CAFA jurisdiction applies.  Even if CAFA's minimum diversity requirements are

9   satisfied, the district court must decline to exercise jurisdiction under CAFA if "two-thirds or more

10  of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are

11  citizens of the State in which the action was originally filed."  *See* 28 U.S.C. § 1332(d)(4)(B).  In a

12  class action in which greater than one-third but less than two-thirds of the members of all

13  proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in

14  which the action was originally filed, the district court may,  in the interests of justice and looking

15  at the totality of the circumstances, decline to exercise jurisdiction.  28 U.S.C. § 1332(d)(3).  The

16  parties appear to agree that whether these exceptions apply cannot be determined from the

17  Original Complaint.  *See* Dkt. 39 at 4 (statement by Plaintiff that Defendant "exclusively

18  possesses the information necessary to determine whether two-thirds or more of the *original* class

19  members are also citizens of California" and thus "whether the Court must decline jurisdiction

20  based on the local controversy exception is not something Plaintiff can presently determine"

21  (emphasis in original)); *id.* at 5 (statement by Defendant that "the [original] class definition was

22  impermissibly vague with respect to its geographic scope, among other things").[1]  Because, as

23  discussed above, the "owned in California" phrase in the original class definition was unclear, it is

24  appropriate to permit an amendment to the complaint—or, in this case, to consider the already-

25  _____

26  [1] Although a declaration submitted in support of Defendant's Notice of Removal stated that "85%
    of original XR purchasers, who presumably represent the bulk of the putative class, reside outside
27  California" (Dkt. 1-2 ¶ 5), this statement does not address the citizenship of the original class
    members.  The original class encompassed only those persons who during the class period "owned
28  any new or used Class Vehicle in California" (Original Complaint ¶ 25), not all original XR
    purchasers.

7

filed FAC—to evaluate whether exceptions to CAFA jurisdiction apply.  *See Broadway Grill*, 856 F.3d at 1279 (stating that *Benko* allowed amendments "so that the district court could decide whether remand to state court was appropriate under the local controversy exception").  As discussed above, the class as defined in the FAC includes only citizens of California; therefore, CAFA's minimal diversity requirement is not satisfied and there is no need to consider exceptions to CAFA jurisdiction.

Fourth, and finally, the Court notes that the parties have themselves previously taken the position that the FAC clarified the Original Complaint.  In support of Defendant's Notice of Removal, Defendant submitted a declaration from its Director of Operations stating that "[b]ecause plaintiff's class is unduly vague and ambiguous, I am at present unable to provide a precise estimate of the number of putative class members."  Dkt. 1-2 (de la Rua Decl.) ¶ 4. Defendant took a similar position when it filed a post-removal motion to strike the class allegations in the Original Complaint, arguing that those allegations are "vague" and "imprecise." Dkt. 8 at 3, 9.  As Defendant explained:

> as a practical matter, Future Motion has no administratively feasible way of identifying all putative class members.  Putting aside the fact that Plaintiff fails to specifically define "own" in this context, Future Motion's internal records could not possibly reveal which customers "owned" their XR in California during the class period.  There are multiple scenarios that could constitute "ownership," which Future Motion has no method of tracking or verifying.  For example, Future Motion's records can establish whether any California residents purchased an XR during the class period.  However, if those individuals purchased the XR as a gift for someone else, or immediately sold the XR to another person after purchasing it, it is unclear who the XR's owner would be under Plaintiff's definition … Similarly, Future Motion can identify out-of-state purchasers based on company records.  Yet if these individuals traveled to California on vacation after they purchased their SRs, it is unclear whether this circumstance would qualify as "owning" an XR in California.

*Id.* at 9.  In Defendant's motion to dismiss the FAC based on lack of subject matter jurisdiction, which Defendant later withdrew, Defendant characterized the amended class definitions as operating to "***clarify*** all its members reside in California."  Dkt. 16 at 3 (emphasis in original).

When the parties met and conferred after Defendant moved to dismiss the FAC for lack of subject matter jurisdiction, Defendant argued that the Court could consider the FAC in deciding

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    whether it had jurisdiction because "plaintiffs are entitled to **clarify** their complaint" and "[i]n so

2    doing, they may make changes that clarify whether the court has jurisdiction." Dkt. 39-3 at PDF

3    p. 3 (citing *Benko*, 780 F.3d at 1117) (emphasis in original). Defendant further stated that:

4         As we mentioned in our motion to strike, your client's initial complaint did not allege a
          clear class. In particular, the definition was such that it was unclear whether it was a
5         nationwide class or just a California one. We understood the new class definition to be a
6         clarification, not a fundamental change in scope.

7    Dkt. 39-3 at PDF p. 3. Plaintiff's counsel responded to this correspondence by stating that after

8    considering the authority provided by Defendant, "we tend to agree that this Court does not

9    actually have jurisdiction over this matter." *Id.* at PDF p. 3.

10        To be sure, in the parties' supplemental brief on subject matter jurisdiction submitted in

11   response to the Court's request, the parties now take the position that the Court has subject matter

12   jurisdiction. Plaintiff states that Defendant's original assumption that the change to the class

13   definition in the FAC was a clarification was incorrect and that by amending the Original

14   Complaint "Plaintiff *limited* the class … ." Dkt. 39 at 3 (emphasis in original). Plaintiff also

15   states that he is confident that the original class included individuals who were citizens of states

16   other than California at the time the Original Complaint was filed. *Id.* at 3. Defendant

17   summarizes the parties' discussions on the issue of subject matter jurisdiction and now takes the

18   position that "plaintiff's original complaint is the only pleading relevant to this Court's

19   jurisdictional analysis." *Id.* at 8. Defendant reiterates its position that "the original complaint was

20   vague," but states that it relies on the representation of Plaintiff's counsel "that the changes

21   between plaintiff's original complaint and the FAC are not of the sort that fall under the *Benko*

22   exception." *Id.*

23        The parties' shifting positions on subject matter jurisdiction are puzzling at best. However,

24   as explained above, the Court has an independent duty to confirm that it has subject matter

25   jurisdiction. The parties cannot create subject matter jurisdiction by agreement or inaction. *See*

26   *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). As discussed above,

27   regardless of the parties' present positions on the issue, the Court interprets the FAC as at least in

28   part a clarification of the original vague and defective class definition and thus considers it in

9

determining whether federal subject matter jurisdiction exists.

On a final note, the Court rejects Defendant's argument that "the *Benko* exception is now wholly inapplicable because remanding this matter would plainly prejudice Future Motion" because it has fully briefed a second set of motions to dismiss and to strike.  Dkt. 39 at 8.  Although Defendant appears to be correct that Plaintiff changed positions on whether the Court has subject matter jurisdiction, the fact remains that Defendant filed, then withdrew, its motion challenging subject matter jurisdiction.  In any event, the Court cannot proceed in a case where it does not have subject matter jurisdiction, and the Court concludes that this is such a case.

**III.    CONCLUSION**

Because it lacks subject matter jurisdiction over this case, the Court **REMANDS** the case to Santa Cruz County Superior Court.  Defendant's motion to dismiss and motion to strike directed at the FAC are **DENIED AS MOOT**.

**SO ORDERED.**

Dated: March 31, 2021

SUSAN VAN KEULEN
United States Magistrate Judge